UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER: |
| | * | 2:18-cr-00366 UDJ/KK |
| VERSUS | * | 33 U.S.C. § 1908 (a) |
| | * | (Knowing Failure to Maintain an |
| INTERORIENT MARINE | * | Accurate Oil Record Book) |
| SERVICES LIMITED | * | |

## BILL OF INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information,

    A.    **THE DEFENDANT**

    1.    Defendant, **INTERORIENT MARINE SERVICES LIMITED** (**"INTERORIENT"**), was a company incorporated in the Republic of Cyprus with its principal place of business located at Fragklinou Rousvelt, 142, 3011, Limassol, Cyprus. Defendant **INTERORIENT**, acting through its agents or employees, who were acting within the scope of their agency or employment, operated the tank vessel *Ridgebury Alexandra Z*.

    B.    **THE VESSEL**

    1. The tank vessel *Ridgebury Alexandra Z* (International Maritime Organization Number 9439785) was a 29,905 gross ton vessel, registered and operated under the flag state administration of the Republic of the Marshall Islands.

2. The *Ridgebury Alexandra Z* was engaged in international commercial maritime operations transporting petroleum and other liquid products to and from Lake Charles, Louisiana, and elsewhere.

3. The *Ridgebury Alexandra Z* had a "Chief Officer," assigned as the person with overall charge and responsibility for the vessel's cargo and deck spaces. The Chief Officer was responsible for, among other things, shipboard control of cargo space oily wastes and oil residues. The Chief Officer was an agent or employee of INTERORIENT, the corporate operator of the *Ridgebury Alexandra Z*, and he acted within the scope of his agency or employment with INTERORIENT when serving onboard the *Ridgebury Alexandra Z*.

4. The *Ridgebury Alexandra Z* had a "Chief Engineer," assigned as the person in charge of the vessel's engine room. As such, the Chief Engineer was responsible for, among other things, shipboard control of machinery space waste, to include sludge and oily bilge water. The Chief Engineer was an agent or employee of INTERORIENT, the corporate operator of the *Ridgebury Alexandra Z*, and he acted within the scope of his agency or employment with INTERORIENT when serving onboard the *Ridgebury Alexandra Z*.

C. **LEGAL FRAMEWORK**

1. The United States is part of an international regime that regulates discharges of oil and garbage from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 ("MARPOL"). MARPOL was enacted into United States law by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901, *et seq*. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. The regulations promulgated under APPS apply to all vessels that operate under the

authority of a country other than the United States while in the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States (33 C.F.R. § 151.09(a)(5)).

2. On tank vessels such as the *Ridgebury Alexandra Z*, it is often necessary to wash and strip cargo tanks and lines in order to prepare the cargo tanks and lines to take on new or different product. The waste water that results from this tank and line washing and stripping is an oily mixture that includes oil cargo residues contaminated with oil, oil residue, lubrication fluids, and other liquids that were contained in the tanks and lines being cleaned. Pursuant to MARPOL and APPS, oily mixtures from oil cargoes may be discharged overboard into the ocean only if, among other things, the vessel is more than 50 nautical miles from land, is proceeding en route, and is discharging at an instantaneous rate of oil content not exceeding 30 liters per nautical mile. 33 C.F.R. § 157.37(a)(1)-(3). The principal technology used to ensure that the oil content of the oil cargo discharges does not exceed the legal limit is an oil discharge monitoring and control system. 33 C.F.R. § 157.37(a)(6). The oil discharge monitoring and control system is often referred to as the oil discharge monitoring equipment (ODME).

3. Consistent with the requirements contained in MARPOL Annex I, the APPS regulations require that each tank vessel of more than 150 gross tons maintain an Oil Record Book Part 1 and Part 2 in which various operations must be recorded, including the discharge of water from slop tanks, the disposal of oily bilge water which has accumulated in machinery spaces, and any failure of the oil discharge monitoring and control system.

4. These operations must be fully and accurately recorded in the Oil Record Book by the person or persons in charge of the operations. 33 C.F.R. § 151.25(d) and (e). The Oil Record Book must also record any emergency, accidental, or other exceptional discharges of oil or oily mixtures. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained onboard the vessel and be readily available for inspection. 33 C.F.R. § 151.25 (i).

5. The U.S. Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a), to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. The U.S. Coast Guard can conduct Port State Control Examinations, which involve boarding a vessel and conducting inspections and investigations of potential violations of the law. Failure to comply with international standards, including MARPOL, can form the basis of an order to refuse to allow a vessel to enter port, or to prohibit the vessel from leaving port without remedial action until the U.S. Coast Guard determines that the vessel does not present an unreasonable threat to the marine environment. 33 C.F.R. § 151.07(b). In conducting their inspections, U.S. Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book. The U.S. Coast Guard is specifically authorized to examine a vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate procedures, whether it poses any danger to United States ports and waters, a n d whether the vessel discharged any oil or oily mixtures in

violation of MARPOL, APPS, or any other applicable federal regulation. 33 C.F.R. § 151.23(a)(3) and (c).

### D.   THE CRIMINAL CHARGE

#### COUNT ONE

1. Sections A through C of this Information are specifically incorporated and re-alleged herein.

2. On or about September 8, 2017, within the navigable waters, internal waters, and ports of the United States in the Western District of Louisiana, the defendant, **INTERORIENT MARINE SERVICES LIMITED**, acting through its agents or employees, did knowingly fail to maintain an accurate Oil Record Book Part 2 for the *Ridgebury Alexandra Z*. Specifically, the defendant, acting through its agents or employees, maintained and caused to be maintained an Oil Record Book Part 2 that failed to accurately record the discharge of oily mixtures and oil cargo residue.

**(Knowing Failure to Maintain Accurate Oil Record Book – Act to Prevent Pollution from Ships**, in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal Regulations, Section 151.25) [33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25].

Respectfully submitted,

DAVID C. JOSEPH
UNITED STATES ATTORNEY

By: _____
DANIEL J. McCOY, La. Bar No. 29334
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

By: _____
STEPHEN DA PONTE, Fl. Bar No. 58454
Trial Attorney
Environmental Crimes Section
Environment and Natural Resources Division
U.S. Department of Justice